## ACCOUNT OF J. W. HENDRIX, DECEASED.

APPEAL BY S. E. TAYLOR, EXR., FROM THE COURT OF QUARTER SESSIONS OF WASHINGTON COUNTY.

Argued October 21, 1891—Decided January 4, 1892.

1. The leaning of the courts is strongly against repealing the positive provisions of a former statute by construction. To repeal a prior statute by implication, there should be such a manifest and total repugnancy in the provisions of the new statute, as to lead to the conclusion that the latter abrogated and was designed to abrogate the former.
2. The provision of § 3, act of April 22, 1856, P. L. 523, giving the Court of Quarter Sessions jurisdiction to consider and examine, by an auditor if necessary, the accounts of the superintendent of the National Road, are not repealed by the provision of § 1, act of April 4, 1877, P. L. 53, requiring the superintendent to submit his accounts to the county auditors.
3. Wherefore, when the county auditors have certified that such an account was examined by them and found to be correct as stated, such finding, though unappealed from, is not conclusive against exceptions to the account and their determination by the court, when it is afterwards presented for confirmation in the Court of Quarter Sessions.

Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Statement of Facts.

No. 294 October Term 1891, Sup. Ct.; court below, No. 63 May Term 1890, Q. S.

On May 20, 1890, S. E. Taylor, executor of the will of J. W. Hendrix, deceased, filed in the Court of Quarter Sessions the account of said Hendrix, as commissioner of the National Road from March 1, 1889, to March 1, 1890. To this account was attached the certificate of the county auditors, dated May 20, 1890, certifying that they had examined the "foregoing account of J. W. Hendrix and find it correct as stated." On August 19th, said account was presented in open court, when it was confirmed nisi September 20th.

On September 15, 1890, Marshel Cox, then commissioner of the National Road, filed exceptions to said account, as follows:

1. The accountant has failed to charge himself with the total amount of moneys received from tolls at gate No. 4.

2. The accountant has failed to charge himself with the amounts collected and paid to Jacob D. Billingsley, keeper of gate No. 4, from March 1, 1889, to March 1, 1890.

3. That J. W. Hendrix, commissioner, was negligent in the performance of his duty, in accepting from the gate-keeper at No. 4, $1,130.75, for tolls received at said gate from March 1, 1889, to March 1, 1890, a very much larger amount having been received at said gate during this period, with which the said accountant should be surcharged.

4. That J. W. Hendrix, commissioner, was negligent in permitting Jacob D. Billingsley to remain as keeper at gate No. 4, when he knew, or must have known by the use of reasonable diligence, that the said keeper was not returning the full and proper amount of tolls received at said gate.

On October 27, 1890, *Mr. H. M. Dougan* was appointed to hear and determine the foregoing exceptions. On May 20, 1891, at the close of the hearing before the auditor, the accountant made a motion before the court, raising the question as to its jurisdiction to entertain the exceptions, and to appoint an auditor to hear and determine the same; and, on June 22d, an order was made refusing the motion pro forma, and referring the question to the auditor, to report thereon with his findings of fact and conclusions of law upon the exceptions to the account.

On September 7, 1891, the auditor filed his report.   Citing
all the statutes relating to the National Road, brought to the
auditor's attention, to wit: Acts of April 4, 1831, P. L. 419;
April 1, 1835, P. L. 101; June 13, 1836, P. L. 534; March 28,
1840, P. L. 207 (repealed by act of March 16, 1847, P. L. 476);
April 8, 1848, P. L. 395; April 22, 1856, P. L. 523; April 4,
1877, P. L. 53, the auditor ruled that the provision of the act
of April 4, 1877, requiring the commissioner to present an ac-
count annually, verified by oath or affirmation, to the auditors
of Washington county, who should examine the same and pub-
lish the result, did not repeal the provision of § 3, act of
April 22, 1856, P. L. 523, requiring the superintendent to make
a full and just exhibit of the receipts and expenditures to the
court from which he received his appointment, " which ac-
counts, before they are certified, shall receive the consideration
and examination of the court, and for this purpose the court
may appoint an auditor, if necessary ; "- that, had the legislature
intended to substitute, for the reference of the account to an
auditor, an appeal to the Court of Common Pleas under §§ 56,
57, act of April 15, 1834, P. L. 547, relating to counties and
townships and county and township officers, those sections
would have been re-enacted and published at length, as re-
quired by § 6, article III. of the constitution ; and that, for
these reasons, there was jurisdiction in the Court of Quarter
Sessions, to entertain the exceptions filed, and to appoint an
auditor to hear and determine them.   The auditor, consider-
ing the said exceptions on their merits, under the facts found
by him upon the evidence adduced, recommended that the es-
tate of J. W. Hendrix, deceased, be required to account for
and pay to the person who may be entitled to receive it, the
sum of $1,820.64, with interest from March 25, 1890, until the
time of payment, in addition to the sum of $1,130.75 charged
in the account as received from gate No. 4; and that the said
estate pay the costs of the audit.

To the said report, the accountant filed exceptions alleging
that the auditor erred :

1. In his conclusions of law, in not dismissing the exceptions
filed to said account, the only remedy of the exceptants being
by appeal from the action of the county auditors.[1]

2. In his conclusions of fact, in surcharging the accountant

of the estate of James W. Hendrix, deceased, with the sum of $1,820.64.[2]

3. The auditor erred in imposing the costs of audit and other expenses upon the accountant.[3]

Said exceptions having been argued, the court, McILVAINE, P. J., on September 17, 1891, filed an opinion, citing, upon the question of jurisdiction, Sifred v. Commonwealth, 104 Pa. 179 ; Homer v. Commonwealth, 106 Pa. 221 ; Barber's Case, 86 Pa. 392 ; and dismissed all the exceptions, confirmed the report, and entered a formal decree as recommended by the auditor. Whereupon, the accountant took this appeal, specifying that the court erred :

1–3. In not sustaining the exceptions filed.[1 to 3]

4. In confirming the report of the auditor.

*Mr. John L. Gow*, for the appellant.

That the report of the county auditors unappealed from was conclusive, counsel cited: Blackmore v. Allegheny Co., 51 Pa. 160 ; Siggins v. Commonwealth, 85 Pa. 282 ; Lacock v. White, 19 Pa. 495 ; Burns v. Clarion Co., 62 Pa. 422 ; Godshalk v. Northampton Co., 71 Pa. 324.

*Mr. J. D. Braden* (with him *Mr. J. M. Braden*), for the appellee.

OPINION, MR. JUSTICE STERRETT :

The question of jurisdiction, mainly, but unsuccessfully relied on by appellant, in the court below, is presented to us in the first and third specifications of error.

It is conceded that under the act of 1856 the Court of Quarter Sessions had jurisdiction of such accounts. The third section of that act requires the superintendent of the Cumberland or National Road to make a full and just exhibit of his receipts and expenditures to the court, at the end of each year, and provides that, before said accounts are certified, they " shall receive the consideration and examination of the court, and for this purpose the court may appoint an auditor, if necessary." But it is contended that this requirement was repealed by the act of April 4, 1877, entitled " An Act to authorize the governor to appoint a commissioner to take charge of that part of

the National Road lying between the Monongahela river westward, and the line on the state of West Virginia." By that
act the governor is authorized to appoint a commissioner who
shall serve for three years from the expiration of the then acting commissioner's term, "and be subject to the laws now in
force for the control and management of said road," etc. It
further provides that said commissioner "shall be required to
present an account annually, verified by oath or affirmation, to
the auditors of Washington county, who shall examine and
audit the same, and publish the result in at least one newspaper in said county, the cost of which publication to be paid
by said commissioner out of any moneys collected as tolls."

The act contains no repealing clause; but, in so far as it
takes from the Court of Quarter Sessions the power of appointing the commissioner, and vests the same exclusively in the
governor, it does, by necessary implication, repeal that provision of the act of 1856. The legislature never could have intended that the power of appointment should be vested in the
governor, and at the same time be exercised by the Court of
Quarter Sessions under the first section of the act of 1856. It
necessarily follows that, so far as authority to appoint the commissioner is concerned, the act of 1856 is supplied by the act
1877. These provisions are entirely inconsistent, and incapable of being so construed that both may stand together. This
principle of construction is recognized in many cases, among
which are Sifred v. Commonwealth, 104 Pa. 179; Homer v.
Commonwealth, 106 Pa. 221, and cases there cited. As was
said by Chief Justice MERCUR, in the first of these cases, the
leaning of courts is strongly against repealing the positive provisions of a former statute by construction. The more natural,
if not necessary inference, in all such cases, is that the legislature intended the new law to be auxiliary to and in aid of the
purposes of the old law. There should therefore be such a
manifest and total repugnancy in the provisions of the new
law, as to lead to the conclusion that the latter abrogated, and
was designed to abrogate the former.

Tested by this principle, there appears to be no such repugnancy between the requirement of the act of 1856, to make a
full and just exhibit of receipts and expenditures to the court,
for its consideration and adjudication, and the provision of the

act of 1877, requiring the commissioner to present his account to the auditors, for examination and publication of the result. These provisions may well stand together. They are not inconsistent; certainly, not any more so than the requirement relating to trustees, executors, etc., whose accounts must be first exhibited to and passed upon by the register, and afterwards submitted to the proper court for final adjudication. The legislature doubtless thought a preliminary examination of the commissioner's account by the auditors, and publication of the result, would invite public attention, and aid the court in the discharge of its duty under the former act. But, whether that be so or not, there is no such inconsistency in the two provisions as would warrant the conclusion that the latter was intended to supply the former.

The question of jurisdiction has been so fully and satisfactorily considered by the learned auditor and court below that further comment is unnecessary.

The surcharge complained of in the third specification is based on facts found by the auditor and approved by the court. The evidence appears to have warranted the findings of fact, and we discover no error in the conclusions drawn therefrom. There was therefore no error in confirming the auditor's report.

Decree affirmed, and appeal dismissed at appellant's costs.