## Milford and Richland Turnpike Road.

*Turnpike condemnation—Rule to vacate proceedings—Condemnation Acts of June 2, 1887; and May 16, 1919—Independent remedies.*

1. The Acts of June 2, 1887, P. L. 306, and of May 16, 1919, P. L. 199, provide separate and independent methods of freeing turnpikes, and the former is not repealed or amended by the latter.

2. In a proceeding to condemn a turnpike under the Act of 1887, it is not necessary to present a petition to the county commissioners requesting them to purchase the turnpike under the Act of 1919, before presenting a petition to the court for the appointment of a master and jury of view.

Rule to vacate turnpike condemnation proceedings. Q. S. Bucks Co.

*C. William Freed* and *Mark Thatcher*, for rule; *Gordon Luckenbill*, contra.

RYAN, P. J., Sept. 6, 1921.—Upon the filing of a petition of resident taxpayers of the county to the number of more than twenty-five, under the provisions of the Act of June 2, 1887, P. L. 306, this court appointed a master and jury to view and report upon the matter of condemnation for public use of the Milford and Richland Turnpike Road, &c. The respondent company procured the above rule, which it contends should be made absolute because the said petition does not set forth the necessary jurisdictional facts to sustain it and empower the court to make said appointments. It is the contention of the respondent that the above cited act is by implication so amended by the Act of May 16, 1919, P. L. 199, as to require the petition provided for by the latter act to be first presented to the county commissioners as a condition precedent to the presentation of a petition for a master and jury of view under the said Act of June 2, 1887. If this construction of the Act of May 16, 1919, be correct, this rule must be made absolute, as it is conceded by the petitioners that no such application as is therein provided for has been made. Each act provides a remedy for the same condition, to wit, the existence of a turnpike road with toll-gates, which it has become advisable, in the interest of the people of the county, to free from tolls and make a public road. The Act of 1919 makes no specific reference to the Act of 1887, but its 3rd section provides that "all acts or parts of acts inconsistent herewith" are hereby repealed. Are the provisions of the two acts so inconsistent and repugnant

that those of the Act of 1919 must be construed as repealing or amending those of the Act of 1887? The former act provides for a petition of twenty-five or more resident taxpayers of the county, setting forth "that it would be for the best interests of the people of their county that such turnpike, road or highway, or part thereof, should be purchased by their county and become a public road, free from tolls and toll-gates," whereupon "it shall be lawful" for the county commissioners to enter into negotiations with the owners of such turnpike, road or highway for the purchase thereof, and to purchase the same if a price can be agreed upon." The respondent regards as significant and as sustaining its contention the proviso which follows the above cited provisions. It is as follows:

"Provided, that if said county commissioners and the owners of said turnpike, road or highway, or part thereof, cannot agree upon the price to be paid for the same, nothing in this act contained shall prevent the petitioners, or any other resident taxpayers of the county, from proceeding to have such turnpike, road or highway, or part thereof, condemned under existing laws," etc. While there is here a recognition of the existence of the remedy by condemnation, there is nothing, either expressed or implied, that can be construed as giving precedence to the remedy of the petition to the county commissioners to purchase. Evidently all that the legislature intended—certainly all that it has said here—is that where taxpayers have first invoked the remedy of the Act of 1919, and it has failed, they or any other taxpayers are not precluded from the remedy of condemnation proceedings provided by the Act of 1887. The intention of the legislature evidently was to furnish an additional remedy to the taxpayers. The later statute contains nothing from which it can be inferred that a petition under the Act of 1887 can only be entertained after an attempt to purchase the toll-road by the county commissioners has failed. "It is well settled that express provision of a subsequent law is not absolutely necessary to repeal a statute. It may be repealed by necessary implication. The leaning, however, of the courts is strongly against repealing the positive provisions of a former statute by construction: Dwarr. on Stat., 154. The more natural, if not necessary, inference in all such cases is that the legislature intend the new law to be auxiliary to, and in aid of, the purpose of the old law. There should, therefore, be such a manifest and total repugnancy in the provisions of the new law as to lead to the conclusion that the latter law abrogated, and was designed to abrogate, the former. . . . The general rule . . . is that there must be such a positive repugnancy between the provisions of the new statute and the old that they cannot stand together or be consistently reconciled: Wallace v. Bassett, 41 Barb. 92; McCool v. Smith, 1 Black U. S. 459; Bank v. Com., 10 Barr, 442; Brown v. County Commissioners, 9 Harris, 37. If it be possible that both can stand by construction, then the proper inquiry is, what was the intention of the legislature? Did it mean to repeal the former law, or was the new law intended to be merely cumulative? United States v. Case of Hair Pencils, 1 Paine, 400:" Sifred v. Com., 104 Pa. 179. See, also, Hendrix's Account, 146 Pa. 285; Com. v. Vetterlein, 21 Pa. Superior Ct. 587. We conclude, therefore, that the Act of June 2, 1887, is not affected by the Act of May 16, 1919, that each act provides a different remedy, and that the appointment of the master and jury upon the petition presented is regular and must be sustained.

And now, to wit, Sept. 6, 1921, the rule granted to show cause why the order appointing the master and jury should not be vacated and the petition dismissed, is discharged at the costs of the petitioner.

From Calvin S. Boyer, Doylestown, Pa.