Commonwealth, Appellant, *v.* Ryan et al.
Commonwealth, Appellant, *v.* Ryan et al.
Commonwealth, Appellant, *v.* Newcomer et al.

Argued December 21, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Grover C. Ladner,* Deputy Attorney General, with him *Charles J. Margiotti,* Attorney General and *Linn V. Phillips,* Special Deputy Attorney General, for Commonwealth.

*E. C. Higbee,* with him *Lewis M. D'Auria,* for appellees.

OPINION BY CUNNINGHAM, J., December 28, 1936:

The Commonwealth has appealed from orders entered by Hon. H. S. DUMBAULD, one of the two additional law judges of the Fourteenth Judicial District, comprising the County of Fayette, quashing indictments in the three above entitled criminal cases now pending in that county. As the same, and only the same, question is involved in each appeal, they will be disposed of in one opinion.

The indictments charge the respective defendants therein named, with the criminal offenses of forcible entry, forcible detainer, cutting wires, and larceny. When the cases were called for trial before Judge DUMBAULD on December 7, 1936, counsel for the defendants moved to quash the indictments for the reason that they were not signed by James A. Reilly, the district attorney of Fayette County. The reply of the Commonwealth was that the indictments were valid because they were signed by Hon. Davis W. Henderson a former judge of Fayette County, then and there acting as a special attorney appointed by the Attorney

General of the Commonwealth to supersede the elected district attorney of the county.

In summarizing his reasons for granting the motions to quash, Judge DUMBAULD said: "We are of the opinion that the signature of Davis W. Henderson, as special attorney for the Commonwealth, to the bills of indictment in question, is not authorized by the proceedings antecedent thereto, and for that reason the motions to quash the indictments will be sustained, with an exception to the Commonwealth." By these appeals the Commonwealth challenges the legality of the orders thus entered, neither by, nor with the approval of, the court in banc, but by a single additional law judge.

The "antecedent" proceedings referred to in the opinion of Judge DUMBAULD originated with the sudden death on September 12, 1936, of Frank C. Monaghan while in the custody of, and undergoing examination by, certain police officers and county officials with respect to a felonious assault alleged to have been made by Monaghan upon John C. Wall, a county detective. The circumstances surrounding the death of Monaghan were strongly indicative of the fact that it resulted from unlawful violence inflicted upon him in an attempt to compel him to admit he had committed the assault upon Wall.

By direction of the Governor, Attorney General Margiotti conducted an investigation of the charges growing out of the death of Monaghan with the result that District Attorney Reilly and one of his assistants, Harry W. Byrne, Wilbert R. Minerd, an assistant county detective, Charles Malik, chief of police of Uniontown, J. A. Hann, a former county detective, Stacey Gunderman and Anthony Sanute, state policemen, were presented by a grand jury of Fayette County and indicted, under indictments signed by the Attorney General, for the murder of Monaghan. The coroner

of the county and certain other persons were indicted as accessories after the fact.

The authority of the Attorney General to intervene in behalf of the Commonwealth in that investigation and to prosecute those indictments was unsuccessfully challenged in our Supreme Court by the defendants named therein. See *Com. ex rel. Minerd et al.*, and *Com. ex. rel. Reilly, v. Margiotti*, 325 Pa. 17, 188 A. 524. It was there held that, entirely aside from Article IX of the Administrative Code of April 9, 1929, P. L. 177, 239, 71 PS §297, the Attorney General of Pennsylvania "is clothed with the powers and attributes which enveloped Attorneys General at common law, including the right to investigate criminal acts, to institute proceedings in the several counties of the Commonwealth, to sign indictments, to appear before the grand jury and submit testimony, to appear in court and to try criminal cases on the Commonwealth's behalf, and, in any and all these activities to supersede and set aside the district attorney when in the Attorney General's judgment such action may be necessary."

Under the circumstances brought to the attention of the Supreme Court in the proceedings above cited, it was suggested by that tribunal, "that Reilly, the district attorney, be generally superseded in his work, as such officer, while charged under an indictment for murder." See opinion granting the petition of the Commonwealth for a change of venue for the trial of the indictments above mentioned, and order assigning and directing Mr. Justice MAXEY to proceed to Somerset County to preside at the trial of District Attorney Reilly and the other defendants in the oyer and terminer of that county, *Com. v. Reilly et al.*, 326 Pa. 188 A. 574.

Pursuant thereto, Hon. THOMAS H. HUDSON, President Judge of the Fourteenth Judicial District, pre-

sented the following petition to the Attorney General, under the captions of the murder cases:

"1. That he has been directed and commanded by the Supreme Court of Pennsylvania to request you, the Attorney General of this Commonwealth, to retain and employ a special attorney to take the place of James A. Reilly, district attorney, and a special attorney to take the place of Harry W. Byrne, assistant district attorney, to represent the Commonwealth and to prosecute alleged offenders against the law, at December Sessions and December Term of Court, 1936.

"2. That in his judgment the above cases and other cases at December Sessions and Term of Court are proper ones for the Commonwealth's intervention, and you are respectfully requested to appoint a special attorney or attorneys, who shall supersede the district attorney and the assistant district attorney in the prosecution of cases at the present sessions of court."

In compliance with this request the Attorney General made the following appointment: "And Now, to wit, this second day of December, 1936, in accordance with the request of the President Judge of the Fourteenth Judicial District made pursuant to Section 907 of the Act of April 9, 1929, P. L. 177, I hereby retain and employ as a special attorney, Honorable D. W. Henderson, to supersede James A. Reilly, Esquire, district attorney, to represent the Commonwealth, to investigate charges and to prosecute alleged offenders against the law in all cases, at December Sessions and December Term of Court 1936, except those cases which I, as Attorney General, shall prosecute personally.

"The said Honorable D. W. Henderson will receive such compensation from the County of Fayette as shall hereafter be fixed by me and also his actual expenses incurred by him in performing his duties under this appointment."

Parenthetically, we may say relative to the last para-

graph of the appointment, directing that the County of Fayette shall be liable for the compensation of the special attorney, that this court has recently held in the case of *Pipa v. Kemberling,* 126 Pa. Superior Ct. 289, 191 A. 373, for the reasons there stated, that the Attorney General is without authority in law to direct and require that any part of such special attorney's compensation shall be paid by the county in which his services are rendered. No question of liability for compensation is involved in the matter now before us and we merely direct attention to that case in order to avoid any misunderstanding.

With this review of the "antecedent" proceedings referred to by Judge DUMBAULD, we proceed to a consideration of Section 907 of the above cited Administrative Code of 1929, under which Special Attorney Henderson was appointed by the Attorney General. It reads: "Special Attorneys in Criminal Cases.—When the president judge, in the district having jurisdiction of any criminal proceedings before any court of oyer and terminer, general jail delivery, or quarter sessions, in this Commonwealth, shall request the Attorney General to do so, in writing, setting forth that, in his judgment, the case is a proper one for the Commonwealth's intervention, the Attorney General is hereby authorized and empowered to retain and employ a special attorney or attorneys, as he may deem necessary, properly to represent the Commonwealth in such proceedings, and to investigate charges, and prosecute the alleged offenders against the law. Any attorney, so retained and employed, shall supersede the district attorney of the county in which the case or cases may arise, and shall investigate, prepare, and bring to trial the case or cases to which he may be assigned. He shall take the oath of office required by law to be taken by district attorneys, and shall be clothed with all the powers and subject to all the liabilities imposed upon them by law.

The compensation for services rendered, and necessary expenses incurred by such attorney or attorneys, shall be fixed by the Attorney General."

Although the opinion of the Supreme Court in *Com. ex rel. Reilly v. Margiotti,* supra, dealt primarily with the common law powers and authority of the Attorney General (which may be exercised in person without any request from the president judge of a judicial district) reference was also made therein to the section of the Administrative Code involved in the present appeals. In the course of the opinion the Supreme Court, citing *Com. v. Havrilla,* 38 Pa. Superior Ct. 292, *Com. v. Mc-Hale,* 97 Pa. 397, and *Com. v. Lehman,* 309 Pa. 486, 164 A. 526, reaffirmed the constitutionality of the section and held that the common law powers of the Attorney General were "in no wise curtailed" thereby but "somewhat enlarged."

In his opinion supporting the orders now before us upon the appeal of the Commonwealth, Judge DUM-BAULD stated he found as a fact that the above request and appointment "were intended to and did constitute an effort to generally supersede the district attorney in the administration of all the functions of his office, during the December Term of court."

We agree that this quotation correctly states the purpose and effect of the proceedings with which we are now concerned. Judge DUMBAULD, as we understand his opinion, does not question the power and authority of the Attorney General to appoint a special attorney in "individual cases, either selected by the President Judge or by the Attorney General," but challenges the legality under Section 907 of proceedings which will have the effect of superseding the district attorney in investigating charges and prosecuting alleged offenders against the law in all cases (except those which the Attorney General intends to prosecute personally) at a designated term of criminal court. Reference is made

to the fact that neither the request of the President Judge nor the appointment of the Attorney General refer to any "particular case or cases." In support of his position, Judge DUMBAULD quotes the following statement, descriptive of the special attorney retained and employed by the Attorney General under Section 907, made by Mr. Justice SCHAFFER in the opinion in *Com. ex rel. Reilly v. Margiotti,* supra: "The attorney so retained and employed, under the terms of the act, supersedes the district attorney only in the case or cases to which he may be assigned, not generally." This statement must be read in the light of the issue then before the Supreme Court, viz., whether the Attorney General, personally, or by his appointee, was authorized to supersede the district attorney of Fayette County in the trial of the Monaghan murder cases. Of course, if the special attorney is appointed for a particular case or cases his authority is limited to the case or cases specified. The question with which we are now dealing was not involved in that proceeding and the language of the opinion in that case cannot be construed to mean that a district attorney may not, under proper circumstances, be superseded as to all criminal cases arising during a specified term or sessions.

We do not agree with the position taken by Judge DUMBAULD. As pointed out and illustrated in the Pipa case, supra, the Attorney General is authorized by Section 907, upon the request of the president judge of a judicial district, to retain and employ a special attorney, or attorneys, not only to try particular cases in which indictments have been found, but also to "investigate charges and prosecute alleged offenders against the law." In the Pipa case no indictments had been found but charges had been made against certain alleged offenders.

Moreover, it has been distinctly indicated by our

Supreme Court that conditions may arise in a county which not only justify, but even require, that the elected district attorney be superseded generally in the performance of all duties connected with the investigation of charges and prosecution of alleged offenders in its criminal courts during a designated period of time. He is not removed from his office, but his right to exercise the same is held in abeyance temporarily.

In the above cited opinion granting a change of venue it was pointed out that the suggestion that District Attorney Reilly "be generally superseded in his work" while under indictment for murder had been disregarded by certain judges of the district. In the latter part of the opinion this language of the Chief Justice appears: "In the present case the Commonwealth alleges, apart from the action of a majority of the court below in failing to recognize the Attorney General's appointees in superseding Mr. Reilly while under indictment, *which was clearly wrong,* many acts on the part of defendants and their sympathizers which have created the development of a factional and partisan opinion throughout the county." (Italics supplied)

The conditions which have prevailed in Fayette County and in its criminal courts since the indictment of the district attorney and his assistant are set forth at length in the opinion of the Supreme Court from which we have quoted and need not be repeated. It would be difficult to conceive of a situation more conducive toward engendering disrespect for the law of the land and its administration by the courts than to permit the important powers and functions of a district attorney to remain in the hands of one who has been indicted by a grand jury upon a charge of murder. We think it clear from the recent opinion and order of the Supreme Court that intervention generally by the Attorney General in behalf of the Commonwealth and the appointment of a special attorney to supersede

the district attorney in the performance of all the duties with which the office of district attorney is charged, during such time as the present incumbent remains under indictment, was fully justified by the existing circumstances.

In addition, it may well be doubted whether a single judge of the judicial district here in question, rather than the court in banc, had power to make an order quashing an indictment.

We prefer, however, to base our conclusion upon the scope and purpose of Article IX of the Administrative Code of 1929. Being of opinion that the appointment of Special Attorney Henderson was authorized by Section 907 of that Article and that he was duly appointed thereunder, it follows that he was fully authorized to sign the indictments in the above captioned criminal cases.

The orders quashing the indictments are severally reversed and the indictments reinstated.